UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____
                                              :
SECURITIES AND EXCHANGE COMMISSION,           :
                                              :
            Plaintiff,                        :
                                              :
            v.                                :    Civil Action. No. 24-CV-8081
                                              :
CYRIL SEBASTIEN DOMINIQUE CABANES,            :    **JURY TRIAL DEMANDED**
                                              :
            Defendant.                        :
_____       :

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission" or "SEC") alleges the following against defendant Cyril Sebastien Dominique Cabanes ("Cabanes" or the "Defendant"):

## SUMMARY

1.     Defendant Cabanes violated the Foreign Corrupt Practices Act of 1977 ("FCPA"), a law that generally prohibits companies whose stock is publicly traded in the United States, and individuals associated with those companies, from paying bribes to foreign officials in order to secure business in foreign countries; here, the Republic of India.  Cabanes, formerly and at all times relevant herein, served as a Director on the Board of U.S. issuer Azure Power Global Limited ("Azure"), as a representative of the company's largest stockholder, Caisse de dépôt et placement du Québec ("CDPQ").  CDPQ is a Montreal, Canada-based pension fund company established by the National Assembly of Quebec, and one of the world's largest infrastructure investors.

2.     While serving as an Azure Director, Cabanes, and others, schemed to make payments to state government officials in India as part of a massive bribery scheme (the "Bribery Scheme") to secure multi-billion-dollar energy projects for Azure and for another company, Adani Green Energy Limited ("Adani Green").  Both Azure and Adani Green are renewable energy companies based in India that, respectively, own and operate power resources and sell the power those resources generate to the government of India.

3.     The genesis of the bribery scheme is in December 2019, when the Solar Energy Corporation of India, Ltd. ("SECI"), an arm of the Indian national government, awarded Azure and Adani Green contracts for a twelve-gigawatt (12 GW) solar energy project (the "Manufacturing Linked Projects").  During 2021 through 2023, Azure and Adani Green, and executives and agents of the companies, engaged in a scheme pursuant to which Adani Green paid or promised approximately $250 million in bribes to Indian state officials to secure contracts necessary to move forward with the Manufacturing Linked Projects, i.e., the Bribery Scheme.  Cabanes became aware of and actively participated in the Bribery Scheme, including via the means of U.S. interstate commerce, no later than May 6, 2022.

4.      Beginning no later than May 2022 Cabanes communicated with Azure officials through various means, including WhatsApp messages that were sent and received in the United States using the means of interstate commerce, along with other electronic communications, about the Bribery Scheme.  As a result of, and reflected in these communications, Cabanes knew that executives of Adani Green had met with Azure representatives, including the Chairman of Azure's Board of Directors (the "Azure Chairman"), to pursue payment from Azure for its agreed upon one-third share of bribes that the executives from Adani Green had paid or promised to pay state government officials in India.  Cabanes also sent and received WhatsApp

communications, and other communications, to and from the United States, using means of interstate commerce, to advance Azure's participation in the Bribery Scheme.

5.       With full knowledge of the agreement that Azure executives, including the Azure Chairman, had entered into with Adani Green and its executives and officials to pay Azure's share of the corrupt payments, Cabanes took steps in furtherance of the authorization of bribes to state government officials in India by directing the Azure Chairman, and others at Azure and CDPQ, to find a "commercially doable deal" that would enable the Adani executives and officials and Adani Green to collect from Azure.

6.       In furtherance of the scheme Cabanes also participated in efforts with the Azure Chairman to conceal information about the Bribery Scheme from the Azure Board of Directors and Azure's attorneys, among others.

7.       By virtue of the foregoing conduct and as alleged herein, Cabanes violated the Anti-Bribery Provisions of the Foreign Corrupt Practices Act Exchange Act Section 30A, 15 U.S.C. §78dd-1.

8.       Unless restrained and enjoined Cabanes will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in similar acts, practices, transactions, and courses of business.

## AUTHORITY, JURISDICTION AND VENUE

9.       The Commission brings this action pursuant to enforcement authority conferred by Section 21(d)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§78u(d) (1)].  The Commission seeks imposition of a civil penalty against Cabanes pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)], an officer and director bar pursuant to Section 21(d)(5) of the Exchange Act  [15 U.S.C. §78u(d)(5)], and such other and

further relief as the Court may deem just and proper.

10.    This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§78u(d), 78u(e) and 78aa].

11.    Venue is appropriate in this Court under Section 27 of the Exchange Act [15 U.S.C. §§78aa] because certain acts or transactions constituting the violations of the federal securities laws detailed herein occurred in this district, including travel through the district and the transmission of electronic messages in and through the district, all in connection with those violations.

12.    Cabanes directly or indirectly made use of the means and instrumentalities of United States interstate commerce in connection with the acts, practices, and courses of business alleged herein.

**DEFENDANT**

13.    Cyril Sebastien Dominique Cabanes ("Cabanes"), age 50, is a citizen of France and resident of Singapore.  He previously was a member of Azure's Board of Directors and was employed by CDPQ as its Head of Infrastructure for the Asia-Pacific region.

**RELATED ENTITIES AND INDIVIDUALS**

14.    Azure Power Global Limited ("Azure") is a limited company organized under the laws of Mauritius with its principal place of business in New Delhi, India.  During the relevant period Azure was a publicly traded company, with a class of common stock previously registered with the Commission pursuant to Section 12(b) of the Exchange Act, trading under the symbol "AZREF" on the New York Stock Exchange.  On November 13, 2023, Azure's stock was delisted for failure to file reports with the Commission.  On April 3, 2024, Azure filed a Form 15 suspending its Exchange Act reporting obligations.  Azure is a renewable energy company that

develops, owns and operates utility-scale grid-connected solar farm projects. Azure specializes in building and operating solar farms, thereby producing and selling solar power in India.

15. Caisse de dépôt et placement du Québec ("CDPQ") is a Montreal, Canada-based pension fund company established by the National Assembly of Quebec and one of the world's largest infrastructure investors. It is the parent company of Azure's largest shareholder and controls four seats on its Board of Directors, including appointment of the chairperson and three others.

16. "Azure Chairman" is a citizen and resident of the United Kingdom. He previously was the Chairman of Azure's Board of Directors and briefly served as its interim Chief Executive Officer.

17. "Azure CEO" was the Chief Executive Officer of Azure at the time of the Azure and Adani Green contract awards and related negotiations in 2019 through 2022. He resigned at the company's request in April 2022.

18. "Azure COO" was a senior executive officer of Azure at the time of the Azure and Adani Green contract awards and related negotiations in 2019 through 2022, first holding the title of President and then Chief Operating Officer before resigning at the company's request in April 2022.

19. Adani Group is an Indian multinational energy and infrastructure conglomerate headquartered in Ahmedabad, India. Adani Group's holdings currently have a market capitalization of approximately $208 billion.

20. Adani Green Energy Limited ("Adani Green") is a public limited company organized under the laws of India with its principal place of business in Ahmedabad, India. Adani Green is a publicly traded company majority-owned by Gautam Adani, the Adani Group,

and other Adani family members.  Adani Green is a renewable energy company that develops, owns and operates utility-scale grid-connected solar farm projects.

21.    Gautam Adani is a citizen of India believed to reside in Ahmedabad, India.  He is the founder of both the Adani Group and Adani Green.  Since 2015, Gautam Adani has served on Adani Green's Board of Directors.  He currently serves as a member of its four-person Management Committee.

22.    Sagar Adani is a citizen of India believed to reside in Ahmedabad, India.  Sagar Adani is Gautam Adani's nephew.  Since October 2018 he has been the Executive Director of Adani Green's Board of Directors.  He is currently Chairman of Adani Green's four-person Management Committee.

23.    Solar Energy Corporation of India, Ltd. ("SECI") is a company of the Ministry of New and Renewable Energy ("MNRE"), Government of India.  SECI is responsible for implementing Indian central government programs related to renewable energy, including funding large solar projects like those Azure and Adani Green build and operate.

## FACTUAL ALLEGATIONS

**I.    Azure and Adani Green Promised or Paid Bribes to State Government Officials in India to Obtain Lucrative Contracts for Manufacturing Linked Projects.**

### *The Manufacturing Linked Projects*

24.    In 2014, the Indian central government announced a goal of achieving 175 gigawatts ("GW") of renewable energy production capacity in India, including at least 100 GW of solar energy production capacity by 2022.  At the time, renewable energy accounted for approximately 17 percent of all energy production capacity in India.  The Indian central government sought to more than double that number.

25.    In anticipation of this effort the Indian central government previously had

instituted Renewable Energy Purchase Obligations that required Indian state-owned energy distribution companies ("DISCOMs")—which are responsible for buying power and transmitting it to consumers within their respective regions—to buy and distribute to consumers certain minimum amounts of renewable energy.

26.    Azure and Adani Green are renewable energy companies based in India.  Azure specializes in building and operating solar farms, which generate electricity that is then supplied to the power grid.  Adani Green develops, owns and operates utility-scale grid-connected solar and wind farm projects.  Azure, like Adani Green, primarily derives its revenue by selling electricity to Indian central government agencies and to DISCOMs, typically under long-term fixed-price Power Purchase Agreements (or "PPAs") that set the price (or "tariff") that the purchaser will pay for power for the duration of the contract.

27.    In June 2019, SECI, a renewable energy agency of the Indian government, announced a Request for Selection ("RfS") seeking bids from solar power developers for the construction of a solar cell and module manufacturing plant that would be linked to SECI's agreement to purchase power from the developer(s) with the winning bid(s).

28.    Broadly described, SECI sought solar power developers to construct a plant or plants in India capable of producing solar power component parts domestically (like cells, modules, or wafers) and, in exchange for that construction and manufacturing, SECI would contract to purchase power from the developer(s) in an amount equal to a multiple of the power generating capacity of the solar components manufactured.  The related projects became known as the Manufacturing Linked Projects.

29.    Multiple companies, including Azure and Adani Green, submitted responses to what became an amended RfS.  On December 10, 2019, as part of a government tender, SECI

jointly awarded Azure and Adani Green contracts for the Manufacturing Linked Projects.
Pursuant to Letters of Award issued by SECI, a) Adani Green would be responsible for and stood
to benefit from two-thirds of the Manufacturing Linked Projects, and b) Azure would be
responsible for and stood to benefit from one-third.  Both Azure and Adani Green were projected
to earn billions in revenue from the Projects.

30.     Azure announced that it had won a portion of the RfS at an investor presentation
on January 16, 2020, disclosing that SECI had awarded it a portion of the projects for the
construction of a manufacturing plant or plants to produce solar power components with 1 GW
capacity.  In turn, SECI would contract to buy 4 GWs of solar power from Azure.

31.     Five months later, on June 9, 2020, Adani Green followed suit, issuing a press
release titled, "Adani Green Energy Wins The World's Largest Solar Award; Leapfrogs Towards
Goal Of 25 GW Of Installed Capacity By 2025."  The announcement noted that SECI had
selected Adani Green to be awarded a portion of the projects associated with the RfS, and that it
would build a manufacturing plant or plants to produce solar components with 2 GW capacity.
In turn, SECI would contract to buy 8 GW of solar power from Adani Green.

32.     Despite the announcements, SECI's Letters of Award to Azure and Adani Green
did not guarantee that SECI would purchase any power from them or that they would earn any
revenue or profits.  More needed to be done.  At minimum, two additional contractual steps were
required.  First, SECI needed to enter into Power Supply Agreements ("PSAs") with the
DISCOMs (the Indian state-owned energy distribution companies) under which the DISCOMs
would agree to buy energy from SECI at solar power prices consistent with those SECI had
agreed to pay Azure and Adani Green in the Letters of Award.  Second, after contracting with
the DISCOMs, SECI needed to enter into PPAs, (again, Power Purchase Agreements) with

Azure and Adani Green, respectively, pursuant to which SECI would buy power from each of them (which SECI would then resell to the DISCOMs under the PSAs).

33.     Under the terms of the RfS, SECI was expected to enter into PPAs with Azure and Adani Green within 90 days of issuing the Letters of Award.  That did not happen.  Instead, the PPAs took more than 18 months—and were executed by SECI only after Azure and Adani Green, acting through various senior executives and officials, undertook a massive bribery scheme.

34.     The problem was economics.  The price SECI accepted for Azure and Adani Green to sell power related to the Manufacturing Linked Projects turned out to be too high. When SECI attempted to contract with Indian state governments and DISCOMs to offload power at prices consistent with the amounts to be paid to Azure and Adani Green, the Indian state governments refused.  Their refusals were overcome only when Azure and Adani Green, acting through various senior executives and officials, paid or promised to pay, in aggregate, hundreds of millions of dollars of bribes to state government officials in India.

### The First Stage of the Bribery Scheme

35.     After SECI issued Letters of Award to Azure and Adani Green for the Manufacturing Linked Projects, and accepted their proposed tariffs as amounts at which SECI would buy solar power from them for the next twenty-five years, SECI attempted to enter into PSAs to sell that power to Indian state governments and state DISCOMs at prices consistent with the Letters of Award.

36.     The Indian state governments and DISCOMs, however, refused to contract with SECI, mainly because certain aspects of the Indian renewable energy market had shifted and caused downward pressure on solar power prices.  Without those PSAs the Letters of Award held

by Azure and Adani Green were virtually worthless.

37.     Meanwhile, between the December 10, 2019, award and June 2020, Azure and Adani Green negotiated with SECI as to, among other things, contract options and amendments that would increase the size of the overall award.  The ultimate size of the award was twelve gigawatts (billions of watts) of power (i.e., 12GW).

38.     Azure's share of the award corresponded to four gigawatts of power (i.e., 4 GW); Adani Green's was 8 GW.  Azure estimated that it would garner approximately $2 billion in profits over a 20-year period from the award and its work on the Manufacturing Linked Projects. But only if SECI was able to enter into the hoped-for PSAs with Indian state governments and DISCOMs.

39.     But Indian state governments and DISCOMS continued to balk at entering into PSAs with SECI to purchase energy at the prices in the contracts awarded to Azure and Adani Green.  Because of energy markets fluctuations and renewable energy auctions in India after the 2019 tender that resulted in lower pricing, the state governments and DISCOMs rightfully believed they would be able to purchase power less expensively elsewhere.  Without PSAs there would be no PPAs, and without the PPAs, the Manufacturing Linked Projects were not commercially viable.  Further pressure came when SECI's parent within the Indian government, the MNRP, threatened to cancel the awarded contracts due to the pricing challenges.

40.     The bottom line for both Azure and Adani Green was that they each stood to lose billions of dollars of potential revenue unless Indian state governments and their related DISCOMs entered into PSAs with SECI.

41.     These developments prompted Azure and Adani Green to renegotiate the contract pricing with SECI and, on December 25, 2020, the companies agreed to price reductions.

Despite the reductions, however, SECI still was not able to secure the necessary PSAs.

42.     Contemporaneous with these legitimate efforts, senior executives and officials of Azure and Adani Green schemed to pressure and to propose to pay "incentives" directly to state government officials in India (i.e., bribes) to cause Indian state government entities and the related DISCOMs to enter into PSAs with SECI at prices favorable to Azure and Adani Green.

43.     For instance, on November 24, 2020, Sagar Adani wrote to the Azure CEO via WhatsApp regarding efforts to place the Manufacturing Linked Projects power and related discussions with CDPQ:  "Yes sir, of course we will push hard to get it through to the finish line."  The Azure CEO responded:  "[T]he advantage we have is that the discoms are being motivated . . . ."  Sagar Adani replied:  "Yup . . . but the optics are very difficult to cover."

44.     On February 25, 2021, in a subsequent WhatsApp exchange regarding the Indian states of Jammu and Kashmir and Chhattisgarh as potential purchasers of the Manufacturing Linked Projects power, Sagar Adani wrote to the Azure CEO:  "Just so you know, we have doubled the incentives to push for these acceptances."  The motivation and incentives referred to in the WhatsApp messages were bribes payments to state government officials in India.

45.     By June 2021—a year after SECI issued a Letter of Award to Adani Green and fifteen months after Azure had announced that it had been selected for the Manufacturing Linked Projects—SECI had still not entered into Power Supply Agreements with Indian state governments related to the Letters of Award and Manufacturing Linked Projects.

46.     That month, Azure stated publicly that its potential profits related to the Manufacturing Linked Projects were at risk:

> [SECI] has informed us that so far there has not been adequate response from the state electricity distribution companies ('DISCOMs') for SECI to be able to sign the Power Sale Agreement ('PSA') at this stage even though we have a [Letter of Award].  SECI has mentioned that they will be unable to sign PPAs until PSAs have been signed, and

they have committed to inform Azure Power of developments in their efforts with the DISCOMS.  Capital costs, interest rates and foreign exchange rates have improved since Azure Power won the 4 GW auction in December 2019 which have resulted in lower tariffs in other recent SECI auctions. . . .  We expect a tariff markdown from the price achieved in the auction, which will facilitate signing of PSAs.  We will continue our discussions with SECI towards signing PPAs in respect of the 4GW tender and believe the PPAs to be signed in tranches over a period of time.

47.     Soon thereafter, Gautam Adani and Sagar Adani increased the pressure on Indian state government officials.  Through their personal involvement and promises to pay or actual payment of hundreds of millions of dollars of bribes, some DISCOMs began to enter into PSAs with SECI.

48.     Adani Green executives and kept track of the bribes, creating and maintaining records of bribes that had been paid or promised to numerous Indian states and Indian state officials to induce them to cause the Indian states to buy renewable energy from SECI.

49.     For instance, according to an Adani Green record, a bribe equal to hundreds of thousands of dollars was paid or promised to government officials in the Indian state of Odisha to cause Odisha to enter into a PSA with SECI for the purchase of 500 MW of power.

50.     Consistent with the Adani Green record, SECI announced its first Power Supply Agreement related to the Manufacturing Linked Projects in July 2021, pursuant to which the Grid Corporation of Odisha agreed to buy 500 MW of power capacity from SECI.

51.     In August 2021, Gautam Adani met with the Chief Minister of a second Indian state, Andhra Pradesh, about the fact that Andhra Pradesh had not entered into a Power Supply Agreement with SECI and the "incentives" needed to cause Andhra Pradesh to do so.  Sagar Adani had a subsequent meeting with the Chief Minister on September 12, 2021.

52.     At or in connection with these meetings, the Adanis (Gautam and Sagar) paid or promised a bribe to Andhra Pradesh government officials to cause the relevant Andhra Pradesh

government entities to enter into PSAs with SECI for the purchase of 7,000 MW of power capacity.  Adani Green records and later statements by Adani Green executives to the Azure Chairman indicated that the Andhra Pradesh bribe payment was approximately $200 million. Shortly after these meetings Andhra Pradesh agreed in principle to execute a PSA with SECI that would directly benefit Adani Green and Azure.

53.    Within weeks, the Andhra Pradesh government was quoted as saying, "[i]n the Cabinet meeting held last month, it was decided to accept SECI's offer.  After deliberation, the State decided to tap 7,000 MW in the first phase."

54.    In other words, the "incentives" worked.  A contemporaneous Adani Green record lists particular Indian states (Odisha, [Jammu and Kashmir], Tamil Nadu, Chhattisgarh, Maharashtra, Kerala, [Andhra Pradesh], and Bihar) and the accompanying amount of power to be purchased by the respective states from SECI.  The same record lists, for each state, the amount of a bribe to be paid and, in some cases, the recipient.  For example, Andhra Pradesh negotiated to purchase 7,000 MW of power from SECI under a PSA.  As part of that agreement—and consistent with what was communicated to Azure executives during in-person meetings in Ahmedabad—the rate of 25 lakh (or "25L," with one lakh equal to 100,000 rupees) per megawatt was used to calculate the amounts promised or paid to officials in Andhra Pradesh. That is, 7,000 megawatts multiplied by 25 lakh, which equals 17.5 billion rupees, or 1,750 crore (a multiple of ten billion rupees)—i.e., more than $200 million.  As the record indicates, these Andhra Pradesh officials included the Chief Minister (or "CM").

55.    Once it gathered steam, the Bribery Scheme worked quickly and effectively. Between July 22, 2021, and December 1, 2021, SECI entered into PSAs with DISCOMs in Odisha, Chhattisgarh, Tamil Nadu, and Andhra Pradesh.  In later meetings in the spring and

summer of 2022, the Adanis outlined to the Azure Chairman how the Bribery Scheme worked and how it successfully generated these PSAs.  The Adanis also explained that Azure's recently deposed CEO and COO were willing participants in the scheme and that they had assured the Adanis that Azure would pay its fair share of the bribes.

56.    Those PSAs allowed SECI to enter into Power Purchase Agreements (the PPAs) with Azure and Adani Green that implemented the terms of the Letters of Award and under which those two companies stood to earn billions of dollars from the Manufacturing Linked Projects.

57.    On December 14, 2021, Adani Green issued a press release titled, "Adani Signs World's Largest Green PPA With SECI," announcing that SECI had contracted to buy nearly 5 GW of power from Adani Green related to the Manufacturing Linked Projects.  The sudden good fortune for Azure and Adani Green prompted speculation in the marketplace about the contract awards.

58.    On December 6, 2021, the Azure CEO and Azure COO attended a meeting at a coffee shop with CDPQ's Country Head for India and CDPQ's Director of Infrastructure for South Asia, who also was a member of Azure's Board of Directors, at which they discussed market rumors that the Adanis had somehow facilitated signing of the PSAs.

59.    One of the attendees at this coffee shop meeting, CDPQ's Director of Infrastructure for South Asia, subsequently wrote "FYI" and forwarded to Cabanes an email summarizing the December 6 meeting in which he referenced "the rumor … regarding potential third party involvement (i.e. corrupt and/or unethical practices) behind the signing of the remaining manufacturing linked PPAs with the state of Andhra Pradesh.  We appreciate you raising the concern . . . ."

60.     On December 15, 2021, the Azure CEO and the Azure COO met with Gautam Adani in Ahmedabad.  The same day the Azure COO created an Excel file named "sale value of manu ppa" reflecting possible transactions that would result in Adani Green acquiring some portion of Azure's assets related to the Manufacturing Linked Project's PPAs.

61.     On December 16, 2021, Azure signed PPAs with SECI for 2.3 GW of power mapped to the Indian state of Andhra Pradesh.

## II.     Cabanes Joins the Bribery Scheme When Azure's CEO and COO Resign and Coordinates an Extensive Cover-Up Within Azure.

### *The Adanis Seek to Collect Azure's Share of the Bribes*

62.     On September 30, 2021, CDPQ, with Cabanes participating, appointed the Azure Chairman as Chairman of Azure's Board of Directors.  The Azure Chairman had had no substantive involvement with the contract awards for the Manufacturing Linked Projects, or with any discussions or negotiations involving any Adani Green officials.  That changed in spring 2022.

63.     A meeting between Adani Green executives—including Gautam Adani—and Azure executives was scheduled to occur in India on April 25, 2022.  The plans for the meeting were affected when the Azure CEO (and the Azure COO) resigned shortly before the meeting on request of the company.

64.     Shortly thereafter, Gautam Adani requested that the Azure Chairman attend a rescheduled meeting four days later, on April 29, 2022.  A more junior Azure executive accompanied him.  During the meeting Gautam Adani described to the Azure Chairman the steps that he had personally taken to overcome the unwillingness of Indian state government and DISCOM officials to enter into PSAs with SECI.  Those steps included his incurring "expenditures," which in the context of the discussion the Azure Chairman understood to refer to

bribes the Adanis and Adani Green had promised or paid to secure the PSAs.  Gautam Adani also explained that previous Azure executives, specifically the recently resigned Azure CEO and COO, were complicit in the scheme and had agreed to pay Azure's share of the bribes.

65.    Gautam Adani sought to collect Azure's share of the bribes, which meant tens of millions of dollars.  To punctuate the discussion an Adani Green record that detailed Azure's share of the bribes promised or made to state government officials in India by the Adanis and Adani Green was read aloud to the Azure Chairman and the more junior Azure executive present at the meeting.

66.    Within days of the April 29 meeting, which was on a Friday, the Azure Chairman updated Cabanes.  Cabanes, as a Director on Azure's Board and a senior executive employed by Azure's primary stockholder, CDPQ, had the authority to direct the actions of certain CDPQ personnel who reported to him—including other members of Azure's board—as well as the actions of Azure's executive team.  In addition, as the CDPQ executive who had hired the Azure Chairman and appointed him as Chairman of Azure's Board on September 30, 2021, Cabanes held significant professional influence over him.

67.    On Monday, May 1, 2022, the Azure Chairman wrote to Cabanes via WhatsApp: "It was an interesting week, and Friday [April 29, 2022] was particularly interesting.  I met on Friday night for a debrief.  My suggestion is that we brief you on some of the detail once we have done more work on it and have a proposed way forward. . . . We are working on understanding exactly what the issues are and what our options might be, then will craft a way forward.  Free to catch up on the phone any time."  Cabanes responded:  "Can I call you late tonight when I get to the airport (10pm)?"  :  "Sure – for you 24/7 . . . But keep some distance on some of the details."

68.    Later the same day the Azure Chairman spoke with Cabanes by telephone and described in detail his April 29 meeting with Gautam Adani.  He told Cabanes that Adani had sought to collect Azure's share of the bribes to state government officials in India relating to the Manufacturing Linked Projects, both for the 2.3 GW PPAs and a 650 megawatt (MW) PPA.  The Azure Chairman recounted that Gautam Adani stated, in summary, that Azure owed approximately one-third of the total bribes promised or paid and that Azure's share was the equivalent of approximately $83 million.  Cabanes was aware of a high probability that the bribe payments promised by Gautam Adani and other Adani Green executives were incomplete; that is, some of the promised bribes had been paid and others were still owed.

69.    Cabanes directly or indirectly made use of the means and instrumentalities of United States interstate commerce in connection with the acts, practices, and courses of business he engaged in to further the Bribery Scheme.  Cabanes, knowing that Adani Green executives had told Azure executives that Adani Green needed to collect Azure's one-third share of the bribes in furtherance of their agreement to pay off the government officials who had facilitated signing of the PSAs underlying the 2.3 GW and 650 MW PPAs, took steps while physically present in the U.S. in furtherance of the authorization of a transaction to fund these bribe payments.

70.    Between April and June 2022, Gautam Adani and Sagar Adani, together with Vneet Jaain, Adani Green's CEO and a member of its Management Committee, met in person in India multiple times with the Azure Chairman and other Azure officials and discussed how Gautam Adani, with Sagar Adani's assistance, had promised or paid bribes to state government officials in India to procure contracts between the Indian states and SECI.  The Adanis repeatedly sought to collect from Azure its agreed-upon share of those bribes.

71.     In those meetings, Gautam Adani detailed, among many other things, how, in mid-to-late 2021, Indian state governments had been reluctant to enter into PSAs with SECI, how he personally intervened, and how he paid or promised bribes to state government officials in India to persuade them to enter into PSAs.

72.     Gautam Adani detailed how his efforts had succeeded in winning business for both Adani Green and Azure, who would benefit from their respective shares of the Manufacturing Linked Projects.

73.     Gautam Adani further insisted that Azure pay one-third of the bribes paid or promised to Indian state government officials, an amount equal to tens of millions of dollars.

74.     Following the meetings with the Adanis, the Azure Chairman and Cabanes routinely strategized various transaction structures to pay Azure's one-third share of the bribes that the Adanis had paid or promised to Indian state government officials.

75.     When Azure representatives informed Gautam Adani that Azure might not be able to directly pay the amount it owed, Gautam Adani proposed that Azure satisfy its one-third portion of the bribes through non-cash transactions.

76.     Among other things, Gautam Adani proposed that, to satisfy part of Azure's obligation to pay one-third of the bribes, Azure cede control of its rights to the most valuable aspect of the Manufacturing Linked Projects—its right to sell 2.3 GW of power to SECI related to Andhra Pradesh—to Adani Green.

77.     To that end, during a visit to the United States between May 5 and May 8, 2022, Cabanes participated in a WhatsApp exchange with the Azure Chairman during which they used the codename "SAG" or "Super Aggregator" to conceal references to Gautam Adani, while discussing how to pay Azure's share of the bribes.  Cabanes queried:  "Is there a commercially

doable deal here?" – which, in the context of their ongoing discussions, the Azure Chairman understood that Cabanes meant a transaction that would compensate Adani Green and the Adanis for Azure's share of the bribery payments.

78.     On May 31, 2022, the Azure Chairman updated Cabanes via WhatsApp on the status of ongoing efforts to identify a transaction that Azure could execute to compensate Adani Green and the Adanis for Azure's portion of the bribes that had been paid or were promised, writing that CDPQ and Azure executives were "talking now on fleshing out our options." Cabanes advocated doing a transaction with Adani:  "Sounds good.  So we have a potential deal on the table?"

79.     Throughout June and July 2022, Cabanes and the Azure Chairman regularly communicated by telephone and other electronic means regarding their efforts to identify and consummate a transaction that, directly or indirectly, would compensate Adani Green and the Adanis for Azure's share of the bribes.  They also discussed the need to conceal aspects of their involvement in any potential transaction from others at Azure.  Cabanes repeatedly directed the Azure Chairman and others to withhold information related to the potential deal with Adani from others, including other members of Azure's Board of Directors.

80.     On June 18, 2022, after consultation with and direction from Cabanes, the Azure Chairman sent a deliberately misleading email to Azure's full Board of Directors, including Cabanes.  The email misleadingly stated that "the economics have deteriorated significantly" as to the Manufacturing Linked Projects, and that Azure "should probably go talk to SECI regarding the vice [*sic*]we are in."  This and related communications laid the groundwork for the "commercially doable deal" that Azure ultimately fashioned.  The deal involved transferring the most valuable PPA in Azure's portfolio—the 2.3 GW contract—back to SECI under the guise of

"deteriorated" economics. The manner and timing of the transfer by Azure was designed to ensure that Adani Green and the Adanis would receive the valuable PPA.

81.    In a series of communications between late June 2022 and August 4, 2022, Cabanes took steps himself and directed others, including the Azure Chairman, to withhold information regarding their bribery payment plans from senior personnel at Azure and CDPQ, and from a Special Committee of the Azure Board of Directors that had been created to investigate the Manufacturing Linked Projects.

82.    On September 30, 2022, shortly before scheduled interviews by the Special Committee of Cabanes, the Azure Chairman, and other Azure and CDPQ executives, Cabanes and the Azure Chairman convened a telephone call with the other executives being interviewed. The purpose of the call was for everyone to align their stories and agree that they would not fully disclose all relevant aspects of the agreement with Adani Green and the Adanis. All participants on the call agreed to withhold certain information from the Special Committee and its investigators.

83.    On December 7, 2022, Azure sent a letter to SECI initiating withdrawal from its largest portion of the Manufacturing Linked Project's PPAs. Cabanes and the Azure Chairman were responsible for the letter and its contents. The letter stated that because the portion of the awards is "unbankable and unviable, we are impaired to proceed . . . " These reasons were pretextual. The real purpose of returning the portion of the PPAs was so that the Adanis and Adani Green could have it as satisfaction of part of Azure's portion of the bribery payments.

84.    On February 21, 2023, Azure sent a further letter to SECI seeking to return the largest portion of its PPAs to SECI under similarly pretextual reasons, summarizing purported "regulatory uncertainties" that left the Manufacturing Linked Project "untenable" and stating that

Azure was "unable to proceed" with the project. Cabanes and the Azure Chairman were responsible for the letter and its contents. The pretext worked. On December 25, 2023, Adani Green publicly announced that it had signed a PPA for the majority of the 2.3 GW portion of the Azure award that Azure had returned to SECI, bringing Adani Green's total PPA total under the 2019 tender to 8,000 MW (8 GW).

85.     The end result of these maneuvers was that Azure did not directly pay any money to Adani Green or the Adanis in satisfaction of Azure's share of the bribe payments. Instead, Cabanes and Azure elected to meet part of Azure's obligation by facilitating the indirect transfer of this lucrative corporate asset—the 2.3 GW PPA—to Adani Green and the Adanis, by first ceding it back to SECI under pretextual reasons. Cabanes acted in furtherance of that transfer while knowing that the Azure Chairman was actively working to facilitate Gautam Adani's efforts to collect Azure's share of the bribes. The transaction that resulted had the economic effect of transferring significant value to Adani Green and the Adanis from Azure.

86.     Cabanes devised and directed a coordinated cover-up of the efforts to compensate Adani Green and the Adanis for the bribery payments or promises that included: withholding information about the Adani deal from non-CDPQ executives at Azure, including other members of the Board of Directors; lying to investigators, including Cabanes's and the company's own lawyers; lying to attorneys and investigators; withholding information about the Adani transactions from certain other Azure executives; colluding with others at CDPQ and Azure to align false narratives; and, scheming with others at CDPQ and Azure to conceal their misconduct behind a compromised "Special Committee" of the Azure Board of Directors that was deprived of full and accurate information regarding the Adani transactions.

87.     Despite retaining valuable PPAs related to the Manufacturing Linked Project,

albeit substantially reduced by the transfers to Adani Green, Azure never received any profits tied to the Bribery Scheme because it was interrupted by investigations related to the Manufacturing Linked Project and its contracts.

## **FIRST CLAIM**

### **Cabanes Violated the Anti-Bribery Provisions of the Foreign Corrupt Practices Act Exchange Act Section 30A, 15 U.S.C. §78dd-1**

88.    The Commission realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 87 above as if set forth fully herein.

89.    By engaging in the corrupt transactions described above, Cabanes, who was a Director of Azure, a United States issuer, made use of the mails or other means or instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of, any money, offer, gift, promise to give, or authorization of the giving of anything of value to foreign officials for the purpose of influencing their acts or decisions in their official capacity, inducing them to do or omit to do any action in violation of their lawful duties, securing an improper advantage, or inducing such foreign officials to use their influence with foreign governments or instrumentalities thereof to affect or influence any act or decision of such government or instrumentality, in order to assist Azure in obtaining or retaining business.

90.    By reason of the foregoing, Cabanes violated Section 30A of the Exchange Act [15 U.S.C. §78dd-1].

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Commission requests that the Court enter a Final Judgment that:

A.  Permanently restrains and enjoins Cabanes and each of his agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual

notice of the injunction by personal service or otherwise, including facsimile transmission or overnight delivery service, from directly or indirectly engaging in the conduct described above, or in conduct of similar purport and effect, in violation of: Exchange Act Section 30A [15 U.S.C. §78dd-1];

B. Permanently prohibits Cabanes from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Exchange Act Section 21(d)(5) [15 U.S.C. § 78u(d)(5)];

C. Orders Cabanes to pay appropriate civil penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)];

D. Retains jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and,

E. Grants such other and further relief as the Court may deem just and proper.

## JURY DEMAND

The Commission hereby demands a trial by jury on all claims so triable.

Dated:  November 20, 2024                On behalf of the Commission,

 /s/ Amy Harman Burkart
Amy Harman Burkart
Eric Heining*
Martin F. Healey*
Paul Block*
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Boston Regional Office
33 Arch Street, 24th Floor
Boston, Massachusetts  02110
(617) 573-8952 (Healey direct)
(617) 573-4590 (fax)
heininge@sec.gov; healeym@sec.gov
*Not admitted in E.D.N.Y.